IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 6, 2009

## STATE OF TENNESSEE v. ELGY SMITH

**Appeal from the Criminal Court for Shelby County**
**No. 07-01038    John P. Colton, Judge**

---

**No. W2008-02812-CCA-R3-CD  - Filed April 14, 2010**

---

A Shelby County jury convicted the Defendant, Elgy Smith, of possession of .5 grams or more of cocaine with the intent to sell, and possession of .5 grams or more of cocaine with the intent to deliver, both Class B felonies; possession of marijuana with the intent to sell, and possession of marijuana with the intent to deliver, both Class E felonies. At sentencing, the trial court merged each pair of convictions and sentenced the Defendant to twenty-five years as a Range III, persistent offender for the cocaine offense and five years as a Range III, persistent offender for the marijuana offense. Finding the Defendant to be a professional criminal, the trial court also ordered the sentences to be served consecutively for a total effective sentence of thirty years incarceration. In this appeal as of right, the Defendant contends that the evidence is insufficient to support his convictions and that his sentence is excessive. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P.  3 Appeal as of Right; Judgments of the Criminal Court**
**are Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

Brett Stein (at trial); William D. Massey and Lorna S. McClusky (on appeal), Memphis, Tennessee, attorneys for the appellant, Elgy Smith.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; William L. Gibbons, District Attorney General; and Dean DeCandia, Assistant District Attorney General, attorneys for appellee, State of Tennessee.

**OPINION**

Memphis Police Department (MPD) Officer Keyon Love testified that he was patrolling the Manassas Street area of Memphis on October 23, 2006, at approximately 7 p.m. He recalled that he was in uniform and driving a marked police car. He first saw the Defendant on the west-side of the street near a grassy area and noted that the Defendant ran across the street to an apartment building as Officer Love passed. Officer Love turned around to drive by the apartment building where he saw the Defendant standing outside. However, upon seeing Officer Love, the Defendant ran into the stairway area of the building again.

Officer Love testified that he contacted Officer Chester Anderson, who was riding with a trainee officer, Officer James Smith, and asked the men to drive by the apartment building while he approached the building on foot. Officer Love stated that as Officers Anderson and Smith neared the apartment building in their car, the Defendant again attempted to retreat into the building but "ended up running into [him]." Officer Love testified that as the Defendant ran toward the building, Officer Anderson saw him throw something to the ground. Officer Anderson retrieved the item which the officers believed to be crack cocaine. Officer Love arrested the Defendant and discovered that the Defendant was carrying $1093 in small bills. Officer Love testified that Officer Anderson searched the grassy area where Officer Love initially noticed the Defendant standing and recovered a bag containing marijuana and a scale. In addition to the scales and money, the individually-packaged bags of crack cocaine, cocaine base, and marijuana were later delivered to the evidence room by Officer Love.

Officer Love testified that the Defendant was not a resident of the apartment building. He also recalled that as the three officers approached the building, there was another individual sitting on a bucket next to the Defendant. However, the other man did not attempt to flee and was released after an investigatory stop and frisk uncovered no evidence of illegal activity. Officer Love testified that the Defendant did not have any drug paraphernalia indicating that the drugs were for his personal use. He also acknowledged that he did not personally see the Defendant with anything in his hands nor did he see the Defendant drop anything.

MPD Officer Chester Anderson testified that he was in uniform traveling in a marked car when he received the call from Officer Love to assist in the investigation of a suspected drug offense. He recalled that he and his patrol partner, Officer Smith, did not use the sirens, yell at the Defendant, or make any attempt to arrest the Defendant until the Defendant attempted to run into the apartment building as they approached the parking lot. He stated that the Defendant and another man were sitting on milk crates and, as he and Officer Smith approached, the Defendant jumped up to run and threw to the ground a baggie containing what was later confirmed to be crack cocaine. He recalled that Officers Love and Smith arrested the Defendant before he could enter the apartment building.

Officer Anderson testified that he recovered marijuana and scales from the grassy area where the Defendant was first spotted by Officer Love. He noted that all the drugs were packaged individually. He recalled that Officer Love delivered the evidence to the evidence room and that he and Officer Smith transported the Defendant to the jail.

MPD Officer James Smith testified that he and Officer Anderson received a call from Officer Love concerning suspicious activity and that as soon as they approached the apartment building, the Defendant attempted to flee into the building. His testimony regarding the discovery of the drugs, scales, and money was consistent with that of Officers Love and Anderson. He admitted that he never saw the Defendant carry in his hand or throw anything to the ground.

Shardonnay Boyd, a civilian employee of the Memphis Police Department Property and Evidence Division, testified that she received the recovered items from Officer Love. She stated that she placed into evidence six individually-packaged bags of crack cocaine, one bag of powder cocaine, eleven bags of marijuana, a scale, and $1093 in small bills of currency. MPD Sergeant Sonia Hicks testified that the currency was taken to the bank, so it would not be the actual bills or denominations if presented as evidence at trial. Ronald Goodwin, an investigator with the Shelby County District Attorney General's Office, testified that he transported the drugs to the Memphis location of the Tennessee Bureau of Investigation (TBI) for weighing and testing. TBI Forensic Scientist Tarsha Boyd testified that she received 9.3 grams of crack cocaine, 1.9 grams of cocaine base, and 24.6 grams of marijuana from Investigator Goodwin.

The Defendant presented the testimony of Tyrone Thomas who said that he saw the Defendant's arrest from his kitchen window. He described the arrest and said that the officers pulled into the parking lot, walked straight to the Defendant, and took the Defendant's money. Mr. Thomas stated that he saw Officer Anderson retrieve something from a tire in the grassy area. He testified that the Defendant did not run when the police approached. He acknowledged that although he claimed the Defendant had been arrested wrongfully, he did not file a complaint with the police department. He also admitted that he used his brother's name as an alias in the past when he had gotten into some trouble.

Danielle Morris also testified for the Defendant. She stated that she talked to the Defendant that night and that another man, Veto, also talked with them. She claimed that the Defendant was standing beside her when the police arrived and that Officer Love immediately grabbed the Defendant. Ms. Morris stated that the police frisked Veto but did not recover a bag of marijuana laying near his foot. She never saw the Defendant run or drop anything. She denied that the Defendant was living with her but did not offer an explanation as to why the Defendant would have given the police her address as his residence. She acknowledged that she never went to the police to tell them that they had arrested the wrong

person and claimed that she had to move to West Memphis, Arkansas because she was being threatened by Veto.

Following a proper colloquy by counsel and the trial court, the Defendant elected not to testify. Based upon this evidence, the jury convicted the Defendant as charged with possession of .5 grams or more of cocaine with the intent to sell and deliver, and possession of .5 ounces or more of marijuana with the intent to sell and deliver.

## ANALYSIS

### *Sufficiency of the Evidence*

The Defendant argues that the evidence is insufficient to support his convictions. He contends that it was reasonable to assume that the individually packaged drugs were for his personal use absent some proof that he intended to sell or deliver them. He also argues that "it is no crime for a man to possess money." Specific to the marijuana conviction, the Defendant contends that there is no proof that he ever possessed the drugs seized from the grassy area. The State argues that the quantity of drugs possessed along with other facts surrounding an arrest may provide an inference that the drugs were possessed for sale or delivery. See Tenn. Code Ann. § 39-17-419. In this respect, the State contends that the Defendant's loitering near the apartment building, his flight each time the officers approached the area, and the discovery of individually-packaged drugs and a large sum of money in small bills provide sufficient evidence to support the convictions.

An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). The appellate court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). "A verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). "This [standard] applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of [both] direct and circumstantial evidence." State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

The elements necessary to establish the offenses of possession with intent to sell or deliver .5 grams or more of cocaine or .5 ounces or more of marijuana are the same, except for the proof of the respective controlled substance or quantity involved. Tennessee Code Annotated section 39-17-417(a)(4) provides that "[i]t is an offense for a defendant to knowingly . . . possess a controlled substance with intent to . . . deliver or sell the controlled substance." The State correctly notes that Tennessee Code Annotated section 39-17-419 provides that "[i]t may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed for the purpose of selling or otherwise dispensing."

Officer Love testified that on two separate occasions, the Defendant fled into an apartment building in which he did not reside when Officer Love approached the building as part of his routine patrol duties. When all three officers approached, the Defendant again attempted to flee. Officer Anderson testified that he saw the Defendant throw a baggie to the ground, which was later determined to contain crack cocaine and cocaine base. The entire investigation – from Officer Love's initial spotting of the Defendant near the grassy area until his arrest – occurred over a matter of minutes, not hours, and it was reasonable for Officer Anderson to search the grassy area for any abandoned contraband the Defendant might have left with his initial flight to the apartment building. Officer Love also testified that the Defendant possessed no paraphernalia indicating that the drugs were for personal use. The individually-packaged drugs, coupled with the large sum of money in small bills found on the Defendant, lend further support to the inference that the Defendant possessed the drugs with the intent to sell and deliver them. Therefore, we conclude that the evidence is sufficient to support his convictions.

*Sentencing*

The Defendant also argues on appeal that the trial court imposed an excessive sentence both in length and manner of service. The Defendant argues that the trial court imposed the sentence after finding enhancement factors "without the assistance of a jury." While not disputing his status as a Range III, persistent offender, he contends that the trial court afforded too much weight to his criminal history in arriving at the length of his sentences. Finally, the Defendant argues that the trial court's use of his criminal history to also impose consecutive sentences "stands against the interest of justice" and "effectively punish[es] [him] twice more for punishments already received." The State argues that the sentences are appropriate in consideration of the Defendant's extensive criminal history.

An appellate court's review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). As the

Sentencing Commission Comments to this section note, on appeal the burden is on the Defendant to show that the sentence is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, the court may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

"However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this respect, for the purpose of meaningful appellate review,

> [T]he trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence.

State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994) (citation omitted); see Tenn. Code Ann. § 40-35-210(e).

Tennessee's sentencing act provides:

(c) The court shall impose a sentence within the range of punishment, determined by whether the defendant is a mitigated, standard, persistent, career, or repeat violent offender. In imposing a specific sentence within the range of punishment, the court shall consider, but is not bound by, the following advisory sentencing guidelines:

> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and
> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c)(1)-(2).

The weight to be afforded an enhancement or mitigating factor is left to the trial court's discretion so long as its use complies with the purposes and principles of the 1989 Sentencing Act and the court's findings are adequately supported by the record. Id. § (d)-(f); State v. Carter, 254 S.W.3d 335, 342-43 (Tenn. 2008). "An appellate court is therefore bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in . . . the Sentencing Act." Carter, 254 S.W.3d at 346. Accordingly, on appeal we may only review whether the enhancement and mitigating factors were supported by the record and their application was not otherwise barred by statute. See id.

In imposing a sentence, the trial court may only consider enhancement factors that are "appropriate for the offense" and "not already . . . essential element[s] of the offense." Tenn. Code Ann. § 40-35-114. These limitations exclude enhancement factors "based on facts which are used to prove the offense" or "[f]acts which establish the elements of the offense charged." Jones, 883 S.W.2d at 601. Our supreme court has stated that "[t]he purpose of the limitations is to avoid enhancing the length of sentences based on factors the legislature took into consideration when establishing the range of punishment for the offense." State v. Poole, 945 S.W.2d 93, 98 (Tenn. 1997); Jones, 883 S.W.2d at 601.

In conducting its de novo review, the appellate court must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, (7) the defendant's potential for rehabilitation or treatment, and (8) any statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee. Tenn. Code Ann. §§ 40-35-102, -103, -210; see also Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229, 236-37 (Tenn. 1986).

The Defendant admits that he has prior convictions for two counts of second degree murder, Class A felonies;[1] two counts of aggravated assault, Class C felonies; one count of reckless homicide and two counts of attempted voluntary manslaughter, Class D felonies; and one count of unlawful possession of a controlled substance, a Class E felony. See Tenn. Code Ann. §§ 39-13-210(c); 39-13-102(e)(1); 39-13-215(b); 39-13-211(b) and 39-12-107(a); and 39-17-417(g)(1). The Defendant also acknowledges that the trial court correctly classified him as a Range III, persistent offender. See Tenn. Code Ann. § 40-35-107(a)(1). The offense of possession of .5 grams or more of cocaine for sale or delivery is a Class B

---

[1] In his brief, the Defendant incorrectly states that second degree murder is a Class B felony. The State incorrectly classified second degree murder as a Class B felony at the sentencing hearing as well.

felony. As a Range III offender, the Defendant faced a sentencing range of twenty to thirty years. Tenn. Code Ann. § 40-35-112(c)(2). The offense of possession of .5 ounce or more of marijuana for sale or delivery is a Class E felony. As a Range III offender, the Defendant faced a sentencing range of four to six years. Id. at (c)(5).

At the sentencing hearing, the trial court imposed a sentence of twenty-five years for the cocaine offense and five years for the marijuana offense based upon its finding of a single enhancement factor: (1) that the Defendant has a history of criminal convictions or behavior beyond that necessary to establish the range. See Tenn. Code Ann. § 40-35-114(1). The trial court based this finding upon the Defendant's criminal history of eight felony convictions and several misdemeanor drug convictions. The trial court noted that the thirty-two-year-old Defendant had been involved in criminal activities as early as age fifteen when he was convicted of committing the first second degree murder. The Defendant makes some allusion to Blakely v. Washington, 542 U.S. 296 (2004) in his brief when he argues that the trial court determined the presence of the enhancement factor "without the assistance of a jury." However, Blakely is not applicable to this case because the Defendant was sentenced for offenses committed after the 2005 revisions to the Sentencing Act. Furthermore, Blakely's requirement that a jury find facts in order to increase the length of a sentence specifically excluded increases based upon a defendant's criminal history.

The Defendant also contends that the trial court placed too much weight on his criminal history in determining the length of sentence. As noted by the State, an appellate court is precluded from reweighing enhancement and mitigating factors correctly found by the trial court. Carter, 254 S.W.3d at 346. Our review of the record supports the trial court's finding regarding the Defendant's criminal history. Accordingly, we affirm the trial court's imposition of sentences.

With regards to consecutive sentencing, the trial court made specific findings that the Defendant was a professional criminal and an offender with an extensive history of criminal activity. Tenn. Code Ann. § 40-35-115(b)(1) and (2). The trial court noted that the Defendant was responsible for the deaths of three individuals. Based upon its review of the presentence report, the trial court also found that the Defendant has never been gainfully employed nor has he taken advantage of the opportunities for rehabilitation presented to him while incarcerated. The Defendant argues that the trial court cannot consider his criminal history to both increase the length of his sentence and order the sentences to be served consecutively. However, this argument is without merit. Our courts have consistently held that criminal history may serve as the basis for findings regarding the length and manner of service. State v. Meeks, 867 S.W.2d 361, 377 (Tenn. Crim. App. 1993). We further conclude that the record supports the trial court's imposition of consecutive sentences in this case. Accordingly, the judgments of the trial court are affirmed.

## CONCLUSION

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
D. KELLY THOMAS, JR., JUDGE